# UNITED STATES DISTRICT COURT

### for the
### Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with the Google account<br>bhope0428@gmail.com that is stored at premises<br>controlled by Google LLC | )<br>)<br>)<br>)<br>)<br>) Case No.   3:18 mj 614 |

**FILED**
RICHARD W. HAGEL
CLERK OF COURT

2018 OCT 11  AM 11: 14

U.S. DISTRICT COURT
WESTERN DIV. DAYTON

MICHAEL J. NEWMAN

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A-2

located in the _____ **Northern** _____ District of _____ **California** _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B-2

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| See Attachment C-2 | |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Andrea R. Kinzig, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   10/11/18

_____
*Judge's signature*

City and state:   Dayton, Ohio

Michael J. Newman, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A-2

Information associated with the Google account **bhope0428@gmail.com** that is stored at premises controlled by Google LLC, a company that accepts service of legal process at 1600 Amphitheatre Parkway, Mountain View, California, 94043.

**ATTACHMENT B-2**
**Particular Things to be Seized**

I.  **Information to be disclosed by Google LLC (the "Provider")**

To the extent that the information described in Attachment A-2 is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, including any e-mails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A-2:

>  Email Accounts:

1.  The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

2.  All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

3.  The types of service utilized;

4.  All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

5.  All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken;

>  Google Photo Accounts:

6.  Subscriber registration information;

7.  All photographs and videos currently or previously contained in the user's account or shared albums, to include deleted photographs and videos, and any associated file information;

>  Google Drive Accounts:

8.  Subscriber registration information;

9.  Any files created or previously contained in the user's account, to include deleted files, and any associated file information;

10.  Any IP logs and other information associated with files from the account;

Web and App History:

11.   Subscriber and registration information;
12.   Any available Web and App History data;
13.   Any IP logs associated with the Web and App History Data;

Google+:

14.   Subscriber registration information;
15.   Circle information to include name of Circle and members, contents of postings, comments, photographs, and time stamps;
16.   Community information, to include name of Community and members, contents of Communities, and comments;
17.   Hangout information, to include name of Hangouts and any preserved videos;
18.   Any photographs and videos posted on the user's account and associated comments;
19.   Any comments posted to other users' accounts.

Android Backup:

20.   Any available backup data for any electronic devices.

The Provider is hereby ordered to disclose the above information to the government within 14 days of the issuance of this warrant.  Notwithstanding 18 U.S.C. § 2252/2252A or any similar statute or code, the Provider shall disclose responsive data by sending it to the Federal Bureau of Investigation at 7747 Clyo Road, Centerville, Ohio, 45459, or making the data available to the Federal Bureau of Investigation via the Provider's electronic portal.

## II.    Information to be seized by the government

Items evidencing violations of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(1) and 2252A(a)(5)(B) and (b)(1) (possession of child pornography); and 18 U.S.C. §§ 2252(a)(2)(B) and (b)(1) and 2252A(a)(2) and (b)(1) (receipt and distribution of child pornography), from October 1, 2017 through the present, including but not limited to the following:

1.    Any visual depictions and records related to the possession, receipt, and distribution of child pornography.

2.    Any visual depictions of minors.

3.    Any communications with others in which child exploitation materials and offenses are discussed and/or traded.

4.    Any communications with minors.

5.    Any Internet or search history indicative of searching for child pornography.

6.    Evidence of utilization of email accounts, social media accounts, online chat programs, and peer-to-peer file sharing programs.

7.    Any information related to Internet Protocol (IP) addresses accounts accessed by the accounts.

8.    Any information related to the use of aliases.

9.    Information relating to who created, used, or communicated with the account, including records about their identities and whereabouts.

**Attachment C-2**

Code Section                                         Offense Description

18 U.S.C. §2252(a)(4)(B) & (b)(1)                     Possession of Child Pornography

18 U.S.C. §2252A(a)(5)(B) & (b)(1)                    Possession of Child Pornography

18 U.S.C. §2252(a)(2)(B) & (b)(1)                     Receipt and Distribution of Child Pornography

18 U.S.C. §2252A(a)(2) & (b)(1)                       Receipt and Distribution of Child Pornography

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Andrea R. Kinzig, being duly sworn, depose and state the following:

## INTRODUCTION

1.     I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and have been so employed since 2005.  I am currently assigned to the Dayton, Ohio Resident Agency of the Cincinnati Field Office.  In connection with my official duties, I investigate violations of federal criminal laws, including offenses pertaining to the illegal production, distribution, receipt, and possession of child pornography (in violation of 18 U.S.C. §§ 2252(a) and 2252A.  I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in various forms of media, including computer media.

2.     Along with other agents and investigators of the FBI, I am currently involved in an investigation of child pornography offenses committed by an individual utilizing the account name of **bipervboi** on the Tumblr website.  This Affidavit is submitted in support of Applications for search warrants for the following:

a.     Information associated with the Tumblr account **bipervboi** that is stored at premises controlled by Tumblr Inc. (as more fully described in Attachment A-1); and

b.     Information associated with the Google account **bhope0428@gmail.com** that is stored at premises controlled by Google LLC (as more fully described in Attachment A-2).

3.     The purpose of the Application is to seize evidence of violations of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(1) and 2252A(a)(5)(B) and (b)(1), which make it a crime to possess child pornography; and violations of 18 U.S.C. §§ 2252(a)(2)(B) and (b)(1) and 2252A(a)(2) and (b)(1), which make it a crime to receive and distribute child pornography through interstate commerce.  The items to be searched for and seized are described more particularly in Attachments B-1 and B-2 hereto.

4.     As part of the investigation, I have reviewed documentation and reports provided by and discussed information with other agents and investigators involved in the investigation. For purposes of this Affidavit, I have not distinguished between information of which I have direct knowledge and that of which I have hearsay knowledge.

5.     This Affidavit does not contain every fact known to the investigation, but only those deemed necessary to demonstrate sufficient probable cause to support the search of the above noted accounts (as described in Attachments A-1 and A-2).

6.    As a result of the instant investigation described more fully below, there is probable cause to believe that evidence, fruits, and instrumentalities of violations of federal law, including 18 U.S.C. §§2252(a)(4)(B) and (b)(1), 2252A(a)(5)(B) and (b)(1), 2252(a)(2)(B), and  2252A(a)(2) are present within the information associated with the above noted accounts (as described in Attachments A-1 and A-2).

## JURISDICTION

7.    This court has jurisdiction to issue the requested warrants because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PERTINENT FEDERAL CRIMINAL STATUTES

8.    18 U.S.C. § 2252(a)(2)(B) states that it is a violation for any person to knowingly receive or distribute any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, shipped, or transported in or affecting interstate or foreign commerce or which contains materials which have been mailed or so shipped or transported by any means, including by computer, or to knowingly reproduce any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

9.    18 U.S.C. § 2252A(a)(2) states that it is a violation for any person to receive or distribute – (A) any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; and (B) any material that contains child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

10.   18 U.S.C. § 2252(a)(4)(B) states that it is a violation for any person to knowingly possess, or knowingly access with the intent to view, one or more matters which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

11. 18 U.S.C. § 2252A(a)(5)(B) states that it is a violation for any person to knowingly possess, or knowingly access with intent to view, any book, magazine, periodical, film, videotape, computer, disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

## BACKGROUND INFORMATION

### Definitions

12. The following definitions apply to this Affidavit and Attachments B-1 and B-2 to this Affidavit:

    a.    "**Child Pornography**" includes the definition in Title 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct).

    b.    "**Visual depictions**" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image (see 18 U.S.C. § 2256(5)).

    c.    "**Minor**" means any person under the age of eighteen years (see 18 U.S.C. § 2256(1)).

    d.    "**Sexually explicit conduct**" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person (see 18 U.S.C. §§ 2256(2) and 1466A(f)).

    e.    An "**Internet Protocol address**", also referred to as an "**IP address**", is a unique numeric address that computers or electronic devices use in order to communicate with each other on a computer network utilizing the Internet Protocol (IP) standard. Every computer or device connected to the Internet is referenced by a unique IP address. An IP address can be thought of as the equivalent to a street

3

address or a phone number, just as each street address and phone number uniquely identifies a building or telephone. IP addresses are composed of four sets of digits known as "octets," ranging in value from 0-255, separated by decimal points. An example of an IP address is 192.168.10.102. There are two types of IP addresses; static and dynamic. A static address is permanently assigned to a particular device and as a practical matter never changes. A dynamic address provided by an Internet service provider to a client computer is valid only for the duration of the session that the client computer is connected to the Internet (or other network).

f.  "**Hyperlink**" (often referred to simply as a "link") refers to a navigation element in a web page or document that automatically brings the referred information (a.k.a. "resource") to the user when the navigation element is selected by the user. Hyperlinks are part of the foundation of the World Wide Web, but are not limited to a website for HTML.

g.  "**Website**" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

h.  "**Uniform Resource Locator**" or "**Universal Resource Locator**" or "**URL**" is the unique address for a file that is accessible on the Internet. For example, a common way to get to a website is to enter the URL of the website's home page file in the Web browser's address line. Additionally, any file within that website can be specified with a URL. The URL contains the name of the protocol to be used to access the file resource, a domain name that identifies a specific computer on the Internet, and a pathname, a hierarchical description that specifies the location of a file in that computer.

i.  The terms "**records**," "**documents**," and "**materials**," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

4

Collectors of Child Pornography

13.   Based upon my knowledge, training, and experience in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the collection of child pornography (hereafter "collectors"):

   a.   Collectors may receive sexual stimulation and satisfaction from contact with children, or from having fantasies of children engaged in sexual activity or suggestive poses, or from literature describing such activity.\

   b.   Collectors may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Collectors typically use these materials for their own sexual arousal and gratification. Collectors often have companion collections of child erotica. Child erotica are materials or items that are sexually suggestive and arousing to pedophiles, but which are not in and of themselves obscene or pornographic. Such items may include photographs of clothed children, drawings, sketches, fantasy writings, diaries, pedophilic literature and sexual aids.

   c.   Collectors who also actively seek to engage in sexual activity with children may use these materials to lower the inhibitions of a child they are attempting to seduce, convince the child of the normalcy of such conduct, sexually arouse their selected child partner, or demonstrate how to perform the desired sexual acts.

   d.   Collectors almost always possess and maintain their "hard copies" of child pornographic images and reference materials (e.g., mailing and address lists) in a private and secure location. With the growth of the Internet and computers, a large percentage of most collections today are in digital format. Typically these materials are kept at the collector's residence for easy access and viewing. Collectors usually place high value on their materials because of the difficulty, and legal and social danger, associated with acquiring them. As a result, it is not uncommon for collectors to retain child pornography for long periods of time, even for years. Collectors often discard child pornography images only while "culling" their collections to improve their overall quality.

   e.   Collectors also may correspond with and/or meet others to share information and materials. They may save correspondence from other child pornography distributors/collectors, including contact information like email addresses, and may conceal such correspondence as they do their sexually explicit material.

5

f.  Collectors prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

g.  Subscribers to websites that are primarily designed to provide child pornography have a strong likelihood of being collectors of child pornography. This high degree of correlation between subscription and collection behavior has been repeatedly confirmed during several recent nationwide law enforcement initiatives.

## Google Services

14.  Google LLC is a multi-national corporation with its headquarters located in Mountain View, California. The company specializes in Internet-related products and services, including an Internet search engine (www.google.com), productivity tools such as email service (gmail), and enterprise products such as Google Search Appliance.

15.  Google Photos is a photograph and video sharing and storage service provided by Google LLC, located at photos.google.com. It allows users to back-up their photographs and videos so they can be accessed on any telephone, tablet, or computer. It also allows users to pool their photographs and videos together with others into shared albums. Photographs and videos can be organized and searched by places and things in them.

16.  Google+ is a social networking and identity service website owned and operated by Google LLC, located at www.plus.google.com. Common features include the following:

a.  Profiles: Users can establish profile pages to maintain personal information, similar to the Facebook and MySpace social networking sites.

b.  Circles: Google+ allows users to establish "circles", which enables them to organize people into groups for sharing across various Google products and services. This service replaces the typical "Friends" list function used by sites such as Facebook and MySpace.

c.  Communities: Communities allow users with common interests to communicate with each other.

d.  Photos: Google+ allows users to post, back-up, and share photographs. Users can also make comments on photographs posted by other users.

e.  Hangouts: Hangouts are places used to facilitate group video chat. Only Google+ users can join such chats.

f.   <u>Messenger</u>:  Messenger is a feature available to Android, iPhone, and SMS devices for communicating through instant messaging within Circles.

17.   Google Web and App History is a feature of Google Search in which a user's search queries and results and activities on other Google services are recorded.  The feature is only available for users logged into a Google account.  A user's Web and App History is used to personalize search results with the help of Google Personalized Search and Google Now.

18.   Google Drive is a file storage and synchronization service provided by Google LLC, located at www.drive.google.com.  This service provides cloud storage, file sharing, and collaborative editing capabilities.  It offers 15 GB of online storage space, which is usable across Google Drive, Gmail, and other Google services.

19.   Google Android Backup is a service provided by Google LLC to backup data connected to users' Google accounts.  The service allows users to restore data from any Google account that has been backed up in the event that the users' devices are replaced or erased.  Data that can be backed up includes Google Calendar settings, WiFi networks and passwords, home screen wallpapers, Gmail settings, applications installed through Google Play, display settings, language and input settings, date and time, and third party application settings and data.

<u>Email Accounts</u>

20.   Google LLC allows subscribers to obtain email accounts at the domain name gmail.com, like the account listed in Attachment A-2.  Subscribers obtain accounts by registering with Google LLC.  During the registration process, Google LLC asks subscribers to provide basic personal information.  Therefore, the computers of Google LLC are likely to contain stored electronic communications (including retrieved and unretrieved email for Google LLC subscribers) and information concerning subscribers and their use of Google LLC services, such as account access information, email transaction information, and account application information.  In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

21.   In general, an email that is sent to a Google LLC subscriber is stored in the subscriber's "mail box" on Google LLC's servers until the subscriber deletes the email.  If the subscriber does not delete the message, the message can remain on Google LLC's servers indefinitely.  Even if the subscriber deletes the email, it may continue to be available on Google LLC's servers for a certain period of time.

22.   Google LLC subscribers can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Google LLC.  In my training and experience, evidence of who was using an email account may be found in

7

address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

23.    In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

24.    In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

25.    In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

26.    As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated

with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

<u>Tumblr</u>

27.     Tumblr Inc. is a company based in New York, New York. Tumblr Inc. operates a microblogging and social networking website that was launched in February 2007. This free-access website allows users to post multimedia to a short-form blog. Users can follow other users' blogs as well as make their blogs private.

28.     Much of the website's features are accessed from the "dashboard" interface. The dashboard is a live feed of recent posts from blogs that users follow. Through the dashboard, users are able to comment, reblog, and "like" posts from other blogs that appear on their dashboard. The dashboard allows users to upload text posts, images, videos, music, quotes, or links to their blog with the click of a button displayed at the top of the dashboard. Users are also able to connect their blogs to their Twitter and Facebook accounts.

29.     As a condition to using Tumblr's services, users are required to create an account and select a Tumblr user name and password. The user name and password serve as a default link to the user's Tumblr blog on the Internet. The URL for the user's Tumblr page is in the form of "[username].tumblr.com". As part of the registration process, Tumblr asks users to provide other basic information such as an email address. Tumblr utilizes the email address to send information to users, including information needed to re-set passwords.

30.     Although users can create accounts on Tumblr and view other users' content free of charge, some of Tumblr's services require payment of fees. For example, licenses for users to utilize particular for-pay aspects of services such as promotions requires payment. Promotions allow users to promote themselves to other subscribers.

31.   Tumblr maintains electronic records pertaining to subscriber accounts. These records include subscriber information, account access information, account application information, and user content (including image files) posted on www.tumblr.com.

32.   Social networking sites like Tumblr typically retain other information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, IP addresses utilized to access the account and post content, and the means and source of any payments associated with the service (including any credit card or bank account numbers). In some cases, users may communicate directly with Tumblr about issues related to their account, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Tumblr typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

### NCMEC and CyberTipline Reports

33.   The National Center for Missing and Exploited Children (commonly known as "NCMEC") was founded in 1984 to serve as a clearinghouse on issues related to missing and sexually exploited children. It is currently authorized by Congress to perform 19 programs and services to assist law enforcement, families, and professions find missing children, reduce child sexual exploitation, and prevent child victimization.

34.   As part of its functions, NCMEC administers the CyberTipline. The CyberTipline receives leads and tips from the public and Electronic Service Providers regarding suspected crimes of sexual exploitation committed against children. Electronic Service Providers are required by law to report apparent child pornography to law enforcement via the CyberTipline. Analysts review these tips and refer them to the appropriate federal, state, and local law enforcement authorities.

## FACTS SUPPORTING PROBABLE CAUSE

35.   INHOPE Foundation is a charitable organization based in Amsterdam, Netherlands. According to its website, the foundation "develops national hotlines across the world in the fight against child sexual abuse material online".

36.   On or around August 21, 2018, a representative from the INHOPE Foundation reported to NCMEC's CyberTipline that the foundation had discovered suspected child pornography files in the Tumblr account located at the following URL: https://**bipervboi**.tumblr.com/archive. After receiving the report, an analyst from NCMEC accessed the aforesaid URL. The NCMEC analyst found that two hyperlinks were contained on the URL: https://**bipervboi**.tumblr.com/post/177167031425/yunglovr-fucking-your-daughter-

should-be-legal and https://**bipervboi**.tumblr.com/post/177166202380/vidioshotblogs-do-i-need-videos-of-girls-who. The NCMEC analyst accessed the two hyperlinks and noted that they both contained apparent child pornography files. The NCMEC analyst's notes identified that he/she would notify Tumblr Inc. about the apparent child pornography found on its website.

37.     Later on or around August 21, 2018, a representative from Tumblr Inc. reported to NCMEC's CyberTipline that it had discovered suspected child pornography files in the Tumblr account located at the following URL: https://**bipervboi**.tumblr.com. Tumblr Inc. reported that this Tumblr account contained the user name of **bipervboi**, and that the email address **bhope0428@gmail.com** was utilized to register the account.

38.     As part of its CyberTipline report, Tumblr Inc. provided to NCMEC approximately twenty-two image files. Tumblr Inc. identified that these image files were a "representative sample" of the contents of the **bipervboi** Tumblr account. As part of the investigation, I have obtained the image files from NCMEC. Based on my review of the files and my training and experience, I believe that approximately nineteen of the images depict child pornography (as defined by 18 U.S.C. § 2256(8)). By way of example, three of the files are described as follows:

a.     177182736065.jpg: The file contains two images that are placed next to each other. Both images depict what appears to be the same two pre-pubescent white female children, both of whom are nude. The image on the left-hand side depicts one of the children kneeling on her hands and knees, exposing her anus and genitals to the camera. The other child is hugging the first child's anus. The image on the right-hand side depicts one of the children standing and one of the children kneeling. The mouth of the child who is kneeling is touching the vagina of the child who is standing.

b.     177184179680_2.png: The file depicts what appears to be a nude pre-pubescent Asian female child. The child is squatting over what appears to be a nude adult white male (whose face is not captured in the image). The penis of the adult male is inserted into the child's vagina.

c.     177166829580.jpg: The file depicts what appears to be a nude pre-pubescent white female child standing in a bathtub. What appears to be a white male's penis is inserted into the child's mouth.

39.     Also as part of its CyberTipline report, Tumblr Inc. provided a log of IP addresses that were utilized to post contents to the **bipervboi** account on or around August 19, 2018. In reviewing this log, I noted that the IP address of 184.59.115.146 was utilized on the majority of the occasions.

40.     Tumblr Inc. identified that after finding the suspected child pornography files, it terminated the **bipervboi** Tumblr account. Tumblr Inc. reported that it would retain the

contents of and other data related to the account for a period of 90 days, and that this data could be provided to law enforcement officers upon receipt of a valid search warrant.

41.     Charter Communications was identified as the Internet Service Provider for the IP address of 184.59.115.146.  On or around September 26, 2018, an FBI investigator served Charter Communications with an administrative subpoena requesting subscriber information for this IP address on a sample of two of the dates and times it was utilized to access the **bipervboi** Tumblr account.  Records received from Charter Communications in response to the subpoena identified that the account was subscribed to Angela Powers at 533 Wyoming Street in Dayton, Ohio.

42.     Review of records from the Ohio Bureau of Motor Vehicles revealed that three individuals currently utilize the address of 533 Wyoming Street in Dayton, Ohio on their current Ohio driver's licenses:  Angela Powers, Matthew Powers, and Matthew Powers II.  It is unknown at this time if any of these three individuals are the user of the **bipervboi** Tumblr account.

## Evidence Available in Email and Social Media Accounts

43.     Based on my training and experience, I am aware that individuals involved in child exploitation schemes often communicate with others involved in similar offenses about their victims and sexual activities via e-mail, social media accounts, and online chat programs.  I have seen examples of cases where such individuals have communicated with other child predators about their sexual fantasies and prior sexual activities with juveniles.  I have also seen cases where such individuals have communicated with others about their remorse and regret for their activities.  Both types of communications provide material evidence in child exploitation cases in that they provide admissions of guilt.

44.     Also in my experience, individuals involved in child exploitation schemes often utilize email, social media, and online chat programs as a means to locate and recruit victims. They then use the chat functions on these and other websites, as well as email accounts, to communicate with their victims.  Such communications provide a means of anonymity to protect the subjects' identities and to conceal the communications from the victims' parents.

45.     Based on my training and experience, I know that individuals involved in child pornography offenses often obtain and trade images with each other via a variety of means, including email, social media accounts, photo sharing services, and online chat programs.  Individuals also often attempt to obtain child pornography from a variety of sources, including from those with whom they communicate via email, social media sites, Internet chat programs, Internet bulletin boards, Internet Peer-to-Peer file sharing programs, Internet websites, and other sources.  I have also seen a number of cases in which individuals email files containing child pornography to themselves – either from

one email account to another or from and to the same email account – in order to transfer the files from one electronic device to another.

46.     Based on my training and experience, one or more aliases are often used by individuals involved in child exploitation offenses as a means to avoid detection from law enforcement. It is not uncommon for such offenders to create multiple identities, sometimes involving different ages and genders. Offenders sometimes fictitiously portray themselves as juveniles as a means to gain trust and rapport with victims. Offenders also sometimes obtain photographs of other individuals from the Internet to use as their profile pictures and/or to send to the victims.

47.     Based on my training and experience, I know that many social media accounts, Internet websites, and telephone providers require users to provide their email accounts when registering for the accounts. The social media and Internet account providers then send the users various notifications regarding messages from other users, information accessed by users, information available by the websites, and other information. Telephone providers often send bills to their customers via email. These messages can provide material evidence in cases involving child exploitation offenses because they help in identifying what social media, Internet accounts, and telephone account that were utilized by the subjects to communicate with other subjects and victims and what accounts were utilized by the subjects to find child pornography. In addition, the messages help in identifying the identities of other subjects and victims.

48.     Also as noted above, Tumblr Inc. and Google LLC maintain various subscriber and user information that their users provide when registering for its accounts. Some email providers also require payment for certain services or features. Such information is materially important in cases where online accounts are utilized to trade child pornography, as this information can help in confirming the identities of the individuals using the accounts and committing the offenses.

49.     Tumblr Inc. and Google LLC maintain various logs of IP addresses utilized to access the accounts. The IP information is again materially important in child pornography investigations. This information helps in identifying the subjects and the locations where their computer devices are located.

50.     Based on all of the information detailed above, there is probable cause to believe that information associated with the **bipervboi** Tumblr account contains evidence of the account user's child pornography activities.

51.     As detailed above, the **bhope0428@gmail.com** email address was utilized to register the **bipervboi** Tumblr account. As such, it is reasonable to believe that the user of the **bipervboi** Tumblr account also utilizes the **bhope0428@gmail.com** email address. Based on all of the information detailed above, there is probable cause to believe that the information associated with the email account **bhope0428@gmail.com** may contain additional evidence of the user's child pornography activities. Communications to or

from the **bhope0428@gmail.com** email account (including communications with adults or other third parties) may be materially relevant to the investigation, as these communications may help to determine or corroborate the identity of the **bipervboi** Tumblr account user. Furthermore, communications to and from the **bhope0428@gmail.com** email account may contain discussions of child exploitation topics, the exchange of child pornography files, discussions with minors, and/or evidence of other electronic accounts utilized in furtherance of the child pornography activities.

<u>Evidence Sought in Other Google Accounts</u>

52. Google LLC has the ability to maintain information associated with the Web and Application history of its users. Such information is materially relevant in child exploitation investigations, as it may help in identifying websites used by subjects to obtain child pornography and locate victims.

53. Google Drive and Google Photos provide users with cloud computing and online file storage (as detailed above) and photo storage services. In my experience, individuals with large collections of child pornography may utilize cloud computing and online storage accounts as a means to store their files after their hard drives become full. In addition, individuals utilize these services as a means to conceal their files from others, including law enforcement.

54. Google Android Backup provides users with the ability to backup data on their cellular telephones and other electronic devices. Such data can be materially relevant in cases in which cellular telephones and other electronic devices are used to commit child exploitation offenses, as this data may provide historical records of their criminal activities that are no longer saved on the devices.

## ELECTRONIC COMMUNICATIONS PRIVACY ACT

55. I anticipate executing the requested warrants for the listed account under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrants to require Tumblr Inc. and Google LLC to disclose to the government copies of the records and other information (including the contents of communications) particularly described in Section I of Attachments B-1 and B-2. Upon receipt of the information described in Section I of Attachments B-1 and B-2, government-authorized persons will review that information to locate the items described in Section II of Attachments B-1 and B-2.

14

## CONCLUSION

56.     Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of the following criminal offenses may be located in the account described in Attachments A-1 and A-2: 18 U.S.C. §§2252(a)(4)(B) and (b)(1), 2252A(a)(5)(B) and (b)(1), 2252(a)(2)(B), and 2252A(a)(2).

57.     I, therefore, respectfully request that the attached warrants be issued authorizing the search and seizure of the items listed in Attachments B-1 and B-2.

58.     Because the warrants for the accounts described in Attachments A-1 and A-2 will be served on Tumblr Inc. and Google LLC, who will then compile the requested records at times convenient to those entities, reasonable cause exists to permit the execution of the requested warrants at any time in the day or night.

Special Agent Andrea R. Kinzig
Federal Bureau of Investigation

SUBSCRIBED and SWORN
before me this ____ of October 2018

MICHAEL J. NEWMAN
UNITED STATES MAGISTRATE COURT JUDGE

15